**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

In re:

**FERNANDO LUIS VILLAMIL WISCOVITCH D/B/A FERNANDO VILLAMIL WISCOVITCH MD**
*Debtor*

Case No. **19-06327-BKT**

Chapter **11**

**CHAPTER 11 PLAN OF REORGANIZATION DATED AUGUST 28, 2020.**

**ARTICLE I
SUMMARY**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of FERNANDO LUIS VILLAMIL WISCOVITCH (the "Debtor") from professional services income from this medical practice, from the sale of real property located at  Condominium Paseo Don Juan, Apt. 7BC, San Juan, PR, and from additional  income to be received from two royalty agreements. This Plan provides for 7 classes of secured claims, and one class of unsecured claims. Unsecured creditors holding allowed claims will receive distributions of **21.26%.** This Plan also provides for the payment of priority unsecured claims and of administrative claims for attorney's fees (to the extent permitted by the Code and the claimant's agreement).

All creditors should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**Class 1:** Class 1 consists of secured claim of Midlist Bank SSB; to the extent allowed as a secured claim under § 506 of the Code. Class 1 creditor is not impaired under the Plan, therefore has no right to vote.

**Class 2:** Class 2 consists of secured claim of First Bank, (Claim No. 16); to the extent allowed as a secured claim under § 506 of the Code. Class 2 creditor is impaired under the Plan, therefore has the right to vote.

**Class 3:** Class 3 consists of secured claim of First Bank, (claim no.15); to the extent allowed as a secured claim under § 506 of the Code. Class 3 creditor is impaired under the Plan, therefore has the right to vote.

**Class 4:** Class 4 consists of a partially secured claim of First Bank Puerto Rico, (claim no. 4); to the extent allowed as a partially secured claim under § 506 of the Code. Class 4 creditor is impaired under the Plan, therefore has the right to vote.

**Class 5:** Class 5 consists of a secured claim of FLVW Retirement Plan; to the extent allowed as a secured claim under § 506 of the Code. Class 5 creditor is not impaired under the Plan, therefore has no right to vote.

**Class 6:** Class 6 consists of a secured claim of Arvest Bank; to the extent allowed as a secured claim under § 506 of the Code. Class 6 creditor is not impaired under the Plan, therefore has no right to vote.

**Class 7:** Class 7 consists of a secured claim of Bank of America, (claim no.13); to the extent allowed as a secured claim under § 506 of the Code. Class 7 creditor is not impaired under the Plan, therefore has no right to vote.

**Class 8:** Class 8 consists of General Unsecured Scheduled Claims, not already classified in other classes of this Plan, to the extent allowed under § 502 of the Code.  Class 8 is impaired to the extent that its original legal rights are being altered through the Plan, therefore it has a right to vote.

### ARTICLE III

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01   Unclassified Claims.   Under section §1123(a) (1), administrative expense claims, and priority tax claims are not in classes.

3.02   Administrative Expense Claims.   Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article 8.02), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   Priority Tax Claims

Each holder of a priority tax claim will be paid 100% of its claims plus interest, in this case there are two holders, one holder will be paid in deferred cash payments over a term

of forty eight (48) months from the date of the effective date and the other holder will be paid in one payment on the effective date of the Plan.

Debtor has two unsecured priority claims. To the extent any claims are filed and allowed as priority claims under § 507 of the Code the same will be paid within the specified period of time stated herein.

Priority tax claims shall be paid an amount equal to the allowed amount of such Claim, plus 4% interest, unless the holder of such Claim agrees with the Debtor to a different treatment.

Debtor's priority tax claims as allowed and ordered paid, if any, by the Court are not impaired under the Plan.

3.04    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930 (a) (6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

3.05    <u>Professional Compensation and Expense Reimbursement Claims.</u>

(1) Any award granted by the Bankruptcy Court shall be paid (i) on the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (ii) upon such other terms as may be mutually agreed upon between the holder of an Allowed Administrative Claim and Debtor or the Reorganized Debtor. Professionals shall file applications for the allowance of compensation for services rendered and for reimbursement of expenses incurred through and including the Confirmation Date, within thirty (30) days thereafter.

(2) All fees and expenses of Professionals for services rendered after the Confirmation Date in connection with the Bankruptcy Case and the Plan including, without limitation, those relating to the occurrence of the Effective Date, shall be paid by Debtor or the Reorganized Debtor upon receipt of reasonably detailed invoices, in such amounts and on such terms as such Professionals and Debtor or the Reorganized Debtor may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

A reconciliation of the claims against Debtor's estate is enclosed as **Exhibit D**.

## ARTICLE IV

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 <u>Classification and Treatment</u>. The following are the operating provisions of Debtor's Chapter 11 Small Business Plan, and the actions that are contemplated by the Debtors in connection with the effectuation thereof:

**Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan. A reconciliation of all claims is included as Exhibit D.

### *1. Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. Following are all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

**Class 1 – Secured Claim: Midfirst Bank SSB**

Secured creditor included in this class, Midfirst Bank SSB, has a claim for $1,168,570.00 secured over debtor's 100% ownership interest in the property located at 10710 Sir Place, Jenks, Oklahoma 74037. The actual estimated value of the property is $1,500,000.00, based on the appraisal report dated July 1, 2019. This claim will continue to be paid in monthly payments according to the terms of the mortgage loan with creditor Midfirst Bank SSB, estimated to be in the amount of $5,851.00.

Class 1 creditor is not impaired under the provision of this Plan; therefore, it has no right to vote.

**Class 2 – Secured Claim: First Bank (Proof of Claim No. 16)**

Secured creditor included in this class First Bank, has a claim (Proof of Claim No. 16) of $1,565,525.00 secured over debtor's 50% ownership interest in real property located at 35 Ave. Luis Munoz Rivera, Caribe Plaza Apt. 1604, San Juan, Puerto Rico 00907. The actual estimated value of the property is $1,690,000.00 based on comparable sales. The Debtor consented to the lift of the automatic stay under 11 U.S.C. 362 (d) (1) as to the aforementioned collateral only to allow lienholder First Bank to proceed with in rem remedies exclusively. <u>See</u> Docket #105. Any deficiency claim will be treated as a general unsecured claim under Class 8.

Class 2 creditor is impaired under the provisions of this Plan, and does has right to vote.

### Class 3 – Secured Claim: First Bank (Proof of Claim No. 15)

Secured creditor included in this class First Bank, has a claim (no. 15) for $396,271.00 secured over debtor's 100% ownership interest in the residential property located at Condominio Paseo Don Juan Apt. 7 BC, San Juan, Puerto Rico 00907. The estimated market value of this property is $750,000.00 based on comparable sales. This claim will be paid as follows. Debtor will continue to make monthly mortgage payments in the estimated amount of $3,549.61 as agreed in the note, and the remaining of the claim will be paid in full on month eighteen (18) from the effective date of Plan, by making a single lump sum payment in the estimated amount of $390,000.00. Proceeds will come from the sale of real property located at Condominio Paseo Don Juan Apt. 7 BC, San Juan, Puerto Rico 00907. The sales' price is estimated in $1,050,000.00.

Class 3 creditor is impaired under the provisions of this Plan, therefore has a right to vote.

### Class 4 – Secured Claim: First Bank Puerto Rico (Proof of Claim No. 4)

Secured creditor included in this class First Bank, has a claim (claim no. 4) for $1,453,879.56 secured over debtor's life insurance cash value held at John Hancock Life Insurance Company with an actual estimated value of $105,569.43. This claim will be paid as follows: the claim will be treated as secured only up to the amount of $105,569.43 with a 3.25%, to be paid in sixty (60) monthly payments of $1,908.70 each, commencing on the effective date of this Plan. The remaining $1,348,310.13 of the claim shall be treated as an unsecured claim under Class 8. First Bank will retain its lien over the secured portion of its claim. Proof of claim number 4 as it currently stands in the docket is incorrect because it alleges that the claim is secured with a real estate property up to $1,418,580.06. Debtor will file an objection to this claim because the real estate serving as collateral to the claim is not property of the estate. As to the property of debtor's estate, First Bank Puerto Rico's claim number 4 is only secured with debtor's life insurance cash value policy with John Hancock as stated before.

Class 4 creditor is impaired under the provisions of this Plan, therefore does has a right to vote.

### Class 5 – Secured Claim: FLVW Retirement Plan

Secured creditor included in this class, FLVW Retirement Plan has a claim of $163,726.00 secured over Debtor's Keogh FLVW Retirement Plan Benefits. This claim will continue to be paid in monthly payments according to the terms of the retirement plan with creditor FLVW, estimated to be in the amount of $2,728.76.

Class 5 creditor is not impaired under the provisions of this Plan, therefore has no right to vote.

### Class 6 – Secured Claim: Arvest Bank

Secured creditor included in this class; Arvest Bank has a claim of $163,726.00 secured over 2019 GMZ Yukon, Vin No. 1GKS2CKKR142661, with an actual estimated value of $62,058.00. This claim will continue to be paid in monthly payments according to the terms of the loan vehicle agreement with Arvest Bank, estimated to be in the amount of $1,128.19.

Class 6 creditor is not impaired under the provisions of this Plan, therefore has no right to vote.

### Class 7 – Secured Claim: Bank of America, N.A.

Secured creditor included in this class; Bank of America, N.A (Claim No. 13) has a claim of $81,379.56 secured over 2019 Range Rover Sport, Vin No. SALWV2S0KA840981, with an actual estimated value of $55,844.00. This claim will continue to be paid in monthly payments according to the terms of the loan vehicle agreement with Bank of America, N.A, estimated to be in the amount of $1,673.00.

Class 7 creditor is not impaired under the provisions of this Plan, therefore has no right to vote.

### 2.    Classes of Priority Unsecured Claims.

Certain priority claims that are referred to in §§ 507(a) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive the present value of such claim, in regular installments paid over a period of 60 months from the order of relief. However, a class of holders of such claims may vote to accept different treatment.

Debtor has two priority claims in the instant case. Both will be paid through the plan to the extent allowed as priority claims under § 507 of the Code. PR Treasury Department and Municipio de San Juan and will be paid by one lump sum payment on month eighteen (18) from the effective date of this Plan.

Priority tax claims shall be paid in an amount equal to the allowed amount of such Claim, unless the holder of such Claim agrees with the Debtor to a different treatment. Debtor's priority tax claims as allowed and ordered paid by the Court are not impaired under the Plan.

The Debtor has Priority Tax Claims which consist of two claims; PR Treasury Department with claim no. 5 for $131,766.00 and Municipio de San Juan with claim no. 6 for $541.00. PR Treasury Department and Municipio de San Juan will be paid in full, by a one-

*19-06327-BKT- 11Chapter 11 Reorganization Plan dated August 28, 2020.*                    *Page -7-*

time lump sum payment in the amount of $132,307.00, on month eighteen (18) from the effective date of the Plan, unless the holder of such claims agrees with the Debtor to a different treatment.

### 3.    *Classes of Nonpriority Unsecured Claims.*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. There is no §1122(b) convenience class in Debtor's Plan.

Following are all classes containing Debtor's unsecured pre-petition claims and their proposed treatment under the Plan:

**Class 8** - includes the Claims of **General Unsecured Creditors** not classified in this Plan, as allowed, approved and ordered to be paid by the Court, under §502 of the Code, currently estimated by Debtor in $3,816,677.00. Creditors included in this class will be paid approximately **21.26%** of their claims or **$782,397.00** of their allowed unsecured claims.

Creditors in this class will be paid in 18 monthly installments of $4,000.00, starting on the effective date of the plan, and subsequently 42 monthly installments of $7,500.00.[1] In addition, this class will receive a one-time lump payment in the amount of $395,397.00 to be distributed prorrata from the sale of property located at Condominio Paseo Don Juan Apt. 7BC, San Juan, PR 00907, within 18 months of the effective date of the Plan, unless the holders of such claims agree with the Debtor to a different treatment.

<u>See</u> **Exhibit B, Exhibit C** and **Exhibit D** of the Disclosure Statement.

Creditors with disputed, contingent and/or unliquidated claims, at the effective date, will receive distribution, if any, if their claim is filed no later than ninety days after the effective date of the Plan and the same is allowed by the Court. Creditors with disputed, contingent and/or unliquidated claims were notified of their status by the Debtor.

Class 8 as allowed and ordered to be paid by the Court is impaired under the Plan, and therefore has a right to vote.

### 4.    **Disputed Claims.**

A disputed claim is a claim that has not been allowed or disallowed, by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has

---

[1] This step up payment comes from the available funds and/or disposable income that debtor is expected to have once the Paseo Don Juan property is sold and the mortgage pay off balance is paid in full on month 18 of the plan.

been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

Where a proof of claim has not been filed, the Allowed Claim shall be in the amount appearing in the Schedules filed by the Debtors, provided however, that the scheduled amount is not shown as unliquidated, contingent or disputed, in which case no amount will be allowed unless the Debtors have notified such creditors and such creditors has filed a timely proof of claim.

The Debtor will have the power and authority to settle and compromise a disputed claim with court's approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed, by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

5.02    Proof of Claims not filed. Where a proof of claim has not been filed, the Allowed Claim shall be in the amount appearing in the Schedules filed by the Debtor, provided however, that the scheduled amount is not shown as unliquidated, contingent or disputed, in which case no amount will be allowed unless the Debtor have notified such creditors and such creditors has filed a timely proof of claim. To the extent no debt was listed by the debtor in his Schedules as allowed, no amount will be provided for claimants who have not filed proof of claims.

5.03    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed, by a final non-appealable order.

5.04    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.05        "Allowed" shall mean:

(a)    With respect to Administrative Claims: any existing or future Administrative Claim either (i) for which a fee application has been filed on or before the date, if any, designated as the last date for filing such fee application and which has been allowed by a Final Order; or (ii) as to any other Administrative Claim, (a) proof of which was

filed on or before the date designated by the Bankruptcy Court as the last date for filing the proof of claim with respect thereto, pursuant to the provisions of this Plan or pursuant to any other order, and (b) as to which either no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Bankruptcy Court, or as to which any timely objection has been determined and all or some portion has been allowed by a Final Order.

(b)      With Respect to any other Claim: any claim, other than an Administrative Claim (1) with respect to which a proof of claim has been filed within the time fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(2); or (2) scheduled in the schedule of liabilities filed pursuant to Section 521(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b) and not therein listed as disputed, contingent or unliquidated, and in either case if no objection to the allowance thereof has been filed, except to the extent that any such objection has been determined by a final and unappealable order of judgment or by stipulation approved by a final and unappealable order or judgment.

5.06    "Contingent or Unliquidated Claim" shall mean any Claim for which: 1) Debtors scheduled as "Contingent or Unliquidated", or 2) a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, and/or which is dependent upon a future event that has not occurred, such as but not limited to, the determination of liability in a pending litigation.

5.07    "Deficiency Claim" shall mean: a Claim of a Creditor equal to the amount by which the aggregate Claims of such Creditor against the Debtor or any third party principal of the obligation, exceeds the sum of (a) any setoff rights of the Creditor against the Debtor or such third party principal plus (b) the Net Proceeds realized from the disposition of the Collateral securing such Claim or, if such Collateral is not liquidated to cash, the value of the interest of the Creditor in the Debtor's or third party Principals' interest in the Collateral securing such Claim, provided however, that if the holder of such Claim makes the election provided in Section 1111(b) of the Bankruptcy Code, there shall be no Deficiency Claim in respect to such Claim.

5.08    Deadline for Objecting Claims. Unless as otherwise provided by Order of the Court, the Debtors retain the right to object to any claim until the later of (a) the date such claim becomes due and payable under this Plan, or (b) 30 days after confirmation of this Plan.

5.09    Estimation of Claims. The Debtor or the Reorganized Debtor may, at any time, request the Court to estimate any disputed claim pursuant to 11 USC sec. 502(c).

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases. The Debtor will assume the following unexpired leases and executory contracts:

| Name | Description of Executory Contract or Lease and Nature of Debtor's Interest |
|---|---|
| Aegis Spine, Inc. | **Contract Type:** Technology development and licensing agreement.<br>**Term:** Entered into on May 1, 2018 for a term of 2 years.<br>**Description:** Agreement for the development of a spinal, cervical, thoracic, lumbar plate and screw system of orthopedic surgery. Monthly research payment of $500.00 per hour. Royalty payment of 2% of the net sales for a term of 7 years. Stock option to purchase 20,000 shares of Aegis Spine, Inc.<br>**Action taken:** Assumed. |
| MIS IP Holdings, LLC (Nuvasive) | **Contract Type:** Royalty Agreement.<br>**Term:** Entered into on January 18, 2018 for a term of 7 years.<br>**Description:** Royalty agreement for the development of medical implants for orthopedic surgery. In consideration of royalty fee payable to the Debtor of 3% from the net sales during the royalty term.<br>**Action taken:** Assumed. |
| Orthopedic Center PC | **Contract Type:** Independent contractor agreement.<br>**Term: Undetermined**<br>**Description:** The Debtor provides professional medical services and receives payments of 50% of the billable hours produced.<br>**Action taken:** Assumed. |

6.02    Rejected Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01 above, or before the date of the order confirming this

Plan, upon the "effective date of this Plan." A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan. Specifically, the debtor will reject the following unexpired leases and executory contracts:

| Name | Description of Executory Contract or Lease and Nature of Debtor's Interest |
|---|---|
| Isaak Manke | **Contract Type:** Residential lease agreement with option to purchase.<br>**Term**: Entered into on December 1, 2018 and set to expired on November 30, 2022.<br>**Description:** Residential lease agreement with option to purchase over Debtor's 50% participation in real property located at Condominio Caribe Plaza Apartment #1604, San Juan, PR 00901.<br>**Action taken:** Rejected.<br>**Treatment:** Any potential claim to come from the rejection of the agreement, will be treated as a priority claim up to $2,850 pursuant to 11 U.S.C. 507 (a) (7) as to any rent deposit. Any other portion from the potential claim will be treated as an unsecured claim under Class 8. |
| V&R Health Group, Corp. | **Contract Type:** Lease agreement for a commercial space.<br>**Term:** Entered into on November 1, 2015 and set to expire on October 1, 2035.<br>**Description:** Lease agreement over a commercial space in the property located at Ashford Avenue #1372, San Juan, PR 00901. Monthly payment of $17,086.00.<br>**Action taken:** Rejected.<br>**Treatment:** Any potential claim to come from the rejection of the agreement, will be treated as an unsecured claim under Class 8 |

6.03   Post-Petition Agreements Unaffected By Plan. Except as otherwise expressly provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by the Debtor after the Petition Date that were otherwise valid, effective and enforceable against the Debtors as of the Confirmation Date.

6.04   Other Contracts and Leases. The Debtor retains the right to enter into such other contracts in the ordinary course of its business for the provision of its services to its

clients, as it may deem proper. Debtor also reserves his right to enter into a contract for the sale of real property, subject to application and approval by the Bankruptcy Court.

### ARTICLE VII

### **MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

7.01    In General.  The Debtor will be able to execute this plan through the Debtor's income for the 60 months beginning on the effective date of the plan, which includes professional services from his medical practice, and payments from royalty agreements. The plan proponent has provided projected financial information. Those projections are listed in **EXHIBIT C of the Disclosure Statement.**

7.02    Operation of Business and Professional Services Provided.   Debtor has professional services income from his medical practice and from royalty agreements. Estimated income projections are included in the Disclosure Statement. *See* **Exhibit C.**

7.03    Income from Rental of Real Property. Debtor will not receive income from his real properties. Estimated income projections are included in the Disclosure Statement. *See* **Exhibit C** of the disclosure statement.

7.04    Income from Litigation.  Debtor does not expect to receive any income from any litigation, if any funds are received the same will be used to fund the plan to the extent the same are not exempt under section 522 of the Bankruptcy Code or assigned to any creditor pursuant to mortgage or security agreement.

7.05    Execution of the Plan. On the consummation date, the operations of Debtor's business shall become vested on the Reorganized Debtor, subject to the terms and conditions as provided herein.

7.06    Distributions under the Plan. Subject to the applicable Bankruptcy Rules, all distributions under the Plan shall be made by check mailed by first class mail, postage prepaid, to the address of each holder as listed on the Schedules unless the Debtor is notified in writing of a different address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. Debtor or Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are property mailed but nevertheless returned.

7.07    Small Payments Reserve. After the effective date, the Debtor or Reorganized Debtor are not obligated to make any payment under the plan unless the payment exceeds $10.00; provided further that cash equal to 100% of the distributions to which the holder of a

Claim would be entitled under the Plan if the Payment to such holder was less than or equal to $10.00, shall be maintained in a reserve (the "Small Payments Reserve") for the benefit of such holder until an aggregate of at least $10.00 is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

7.08   Distribution to be on Business Day. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

7.09   Reversion of Unclaimed Checks. The amounts of any checks issued under this Plan that remain uncashed for a period of 90 days after the date of issuance shall revert to and be vested in the Reorganized Debtor, free and clear of any claim or interest of any holder of that Claim under the Plan.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01   Definitions and Rules of Construction.   The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02   Effective Date of Plan. The effective date of this Plan shall be the thirtieth (30th) day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect provided that the confirmation order has not been vacated. The effective date shall be the date on which there shall be made all initial payments under the plan.

8.03   Severability.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05   Captions.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the

Commonwealth of Puerto Rico govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### ARTICLE IX

### DISCHARGE OF DEBTOR

9.01.   The Debtor is an individual and § 1141(d) (3) is not applicable. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d) (5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.02.   Discharge of Claims. Except as otherwise expressly provided herein, by the Bankruptcy Code or in the Confirmation Order, the rights granted by this Plan and the payments and distributions made hereunder shall be in complete exchange for and in full and final satisfaction, settlement, release and discharge of all existing debts and Claims of any kind, nature or description whatsoever against the Debtor or the Debtor in Possession, or the Reorganized Debtor, or any of his assets or properties; and on the Consummation Date, all existing Claims against the Debtor or Debtor in Possession shall be, and shall be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of Claims shall be precluded from asserting against the Debtor and the Reorganized Debtor, or his assets or properties any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Consummation Date, whether or not such holder filed a proof of claim; whether or not such Claim is allowed, and whether or not the holder of such Claim has accepted the Plan.

9.03   Effect of Confirmation Order - Injunction Relating to the Plan. Except as otherwise provided for in this Plan, the Confirmation Order shall constitute an injunction against the pursuit of any Claim whether or not a proof of claim based on any such debt or liability, filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code.

9.04   Cancellation of Existing Indebtedness and Liens. Except as may otherwise be provided in the Plan, on the Consummation Date, all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against Debtor, together with any and all Liens securing the same, shall be canceled, discharged and released without further act or action by any

Person under any applicable agreement, law, regulation, order or rule, and Debtor's obligations there under shall be deemed cancelled, discharged and released. To the extent deemed necessary or advisable by Debtor or the Reorganized Debtor, any holder of a Claim shall promptly provide Debtor or the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

9.05   Setoffs. Except as otherwise provided herein, nothing contained in the Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any creditor.

## ARTICLE X

## VOTING ON THE PLAN AND COMPLIANCE WITH 11 USC SEC. 1129

10.01   Unimpaired Class. Persons holding administrative expense claims, Classes deemed unimpaired by this Plan in accordance with Section 1124 of the Bankruptcy Code are deemed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code. Accordingly, Debtor is not required to solicit the votes of such classes with respect to the acceptance or rejection of the Plan. Claim(s) in Class 2 of the plan is (are) deemed unimpaired therefore, are deemed to have accepted the Plan.

10.2   Voting of Claims. Each holder of an Allowed Claim in a Class identified as impaired which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot. Claims in classes (2, 3, 4, and 8) of this Plan are deemed impaired therefore, have a right to vote.

10.3   Nonconsensual Confirmation Under Section 1129(b) "Cram Down":  In the event that an impaired class will have failed to accept the Plan by the requisite majorities in accordance with Sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, Debtor reserves his right and intend to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and/or to amend the Plan in accordance with Section 12.3 hereof to the extent necessary to obtain the entry of a Confirmation Order.

Specifically, the Court may confirm a plan over the objection of a class of secured claims if the members of that class are unimpaired or if they are to receive under the plan property of a value equal to the allowed amount of their secured claims, as determined

under 11 USC 506(a). The property is to be valued as of the Effective Date of the Plan, thus recognizing the time-value of money.

The Court may confirm a plan over the dissent of a class of unsecured claims, including priority claims, only if the members of the class are unimpaired, if they will receive under the plan property of a value equal to the allowed amount of their unsecured claims, or if no class junior will share under the Plan. That is, if the class is impaired, they must be paid in full or, if paid less than in full, then no class junior may receive anything under the plan.

10.4    Section 1129(a) (12) Compliance. After all fees payable under 28 USC sec. 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, either will have been paid or will be paid on the Consummation Date as an Administrative Claim.

10.5    Deemed Satisfaction of Section 1129(a) (13) of the Bankruptcy Code. Prior to the commencement of the Chapter 11 case, the Debtor did not have a plan providing for retiree benefits, as defined in Section 1114 of the Bankruptcy Code. Consequently, the confirmation requirements contained in Section 1129(a) (13) of the Bankruptcy Code are inapplicable to the Plan, and the Plan shall be deemed to have satisfied such requirements.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION

11.01  That it be determined by the Bankruptcy Court after hearing on notice that:

(a)    The Plan has been accepted in writing by the creditors whose acceptance is required by law;

(b)    The provisions of Chapter 11 of the Code have been complied with and that the Plan has been proposed in good faith and not by any means forbidden by law;

(c)    Each holder of a claim required to vote on the Plan has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amounts such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Code on such date. The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under the Plan and has not accepted the Plan;

(d)    All payments made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan or by any other person for services or for costs and expenses in, or in connection with the Plan and incident to the case, have been

---

fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court;

(e)    Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or the Reorganized Debtor.

## ARTICLE XII
## CONSUMMATION

12.01. <u>Consummation of the plan.</u>  The consummation of the plan shall mean the accomplishment of all things contained or provided for in this Plan, and the entry of a final decree in this case.

12.02. <u>Conditions Precedent.</u>  The following shall be conditions precedent to the consummation of the Plan: a) that the confirmation Order be final; and b) the transactions and payments set forth in this Plan have been placed in effect.

12.03. <u>Transactions in furtherance of consummation of the Plan</u>. On the effective date, the Reorganized Debtor shall be authorized to take such actions and execute such documents as may be necessary to effectuate the consummation of this Plan.

## ARTICLE XIII
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

13.1    <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over the Chapter 11 case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim, including administrative claims;

(b) to hear and determine any and all fee applications and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(c) to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting there from;

(d) to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(f)  to enforce the provisions of the Plan subject to the terms thereof;

(g)  to modify the Plan or remedy or correct any defect or omission, or reconcile any inconsistency in the Plan, or in any of its Orders, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(h)  to determine such other matters as may be provided for in the Confirmation Order.

(i)  to enter such orders as may be necessary to consummate, implement and effectuate the operative provisions of the Plan and execute all documents and agreements provided for herein or entered into pursuant hereto, including, without limitation, to issue pertinent orders to protect the Debtors from creditor's actions; and

(j)  to enter a final decree closing the Chapter 11 case.

13.2  <u>Failure to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising our of a Chapter 11 case, including the matters set forth above, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XIV**

**<u>AMENDMENTS AND INTERPRETATION OF THE PLAN</u>**

14.1  <u>Amendment or Modification of the Plan</u>.  The Debtor may propose amendments or modifications of the Plan at any time prior to its confirmation, upon notice to creditors and parties in interests. Upon request of the Debtors, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

14.2  <u>Headings</u>.  The headings used in the Plan are inserted for convenience of reference only and neither constitutes part of the Plan or in any manner affect the provisions or interpretation hereof.

14.3  <u>Severability</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtors' request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original

purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable according to its terms.

14.4    Revocation or Withdrawal of the Plan.  Debtor reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If Debtor revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner Debtors' rights or those of any Person in any further proceedings involving Debtor.

14.5    Successors and Assigns.  The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such person.

14.6    Internal References.  The words "herein", "hereof"; "hereto", "hereunder", and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

## ARTICLE XV

## OBJECTIONS TO CLAIMS

15.01   Deadlines for Objecting to Dispute Claims.  Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, Debtor or the Reorganized Debtor may file an objection to such Claim or otherwise dispute such Claim until the later of (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) 30 days before the confirmation hearing, or 30 days after filing the proof of claim, whichever is later. If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim and in accordance with the provisions of the Plan governing such class to which such claims belongs.

15.02 The following Scheduled Claims are listed as Disputed, Contingent, and Unliquidated in this case and will not receive any distribution under the plan for failure to timely file an allowable proof of claim:

| Creditor | Postal Address | Basis of Disputed Claim | Amount Disclosed in Schedule F |
|---|---|---|---|
| N/A | | | |

## ARTICLE XVI
## DISPUTED CLAIMS RESERVE

16.01. The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical, following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Disputed claims have been provided a period of time of ninety (90) days after the entry of the order confirming debtors' Plan to file their claim. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve, Debtors, the Reorganized Debtors with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim.

## ARTICLE XVII
## PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTORS OR TO THE ESTATE

17.01  According to the provisions of Section 1123(b) (3) of the Bankruptcy Code, the Reorganized Debtors will retain and enforce or settle and adjust any claim belonging to them or to the estate.

## ARTICLE XVIII
## MISCELLANEOUS

18.01  Notices.  All notices, requests and demands to or upon Debtors shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to

---

have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

***ALMEIDA & DÁVILA, P.S.C.***
Counsel for Debtors
PO POX 191757
San Juan, PR 00919-1957
Tel.  (787)  722-2500
Fax. (787) 777-1376
e-mail: info@almeidadavila.com

15.2   <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico.

15.3   <u>Inconsistencies</u>. In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this August 28, 2020.


By: /s/ *Fernando Villamil Wiscovitch*

FERNANDO VILLAMIL WISCOVITCH

WE HEREBY CERTIFY that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants including the U.S. Trustee.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this August 28, 2020.



*Attorneys for Debtor*

*PO Box 191757*
*San Juan, PR 00919-1757*

*/s/ Enrique M. Almeida, Esq.*
**Enrique M. Almeida, Esq.**
*USDC-PR 217701*
*enrique.almeida@almeidadavila.com*

*/s/ Zelma B. Davila, Esq.*
**Zelma B. Dávila, Esq.**
*USDC- PR 218913*
*zelma.davila@almeidadavila.com*