## PURCHASE AND SALE AGREEMENT

This **PURCHASE AND SALE AGREEMENT** ("Agreement") is made as of June 15, 2021 (the "Effective Date"), by and between **FERNANDO LUIS VILLAMIL WISCOVITCH**, of legal age, married to Sency Mellado under a prenuptial agreement providing total separation of property/assets, doctor in medicine, and resident of Jenks, Oklahoma, and **DENISE ROVIRA BELLIDO**, of legal age, single, proprietor, and resident of San Juan, Puerto Rico, each owning a 50% joint undivided interest in the Properties (as such term is herein defined) (hereinafter jointly referred to as the "Seller"), and **ISAAC MANKE and YEZENIA MANKE**, of legal age, married to each other, businesspeople and residents of San Juan, Puerto Rico (hereinafter referred to as the "Buyer") (hereinafter collectively referred to as, the "Parties" and each sometimes as "Party").

### RECITALS

On November 15, 2018, the Parties entered into a Residential Lease Agreement with Option to Purchase, Deed Number One Hundred and Ten (110) before Notary Public Gwendolyn Moyer Alma (hereinafter referred to as the "Deed of Lease with Option to Purchase"), in connection with the real estate properties located in 35 Muñoz Rivera Avenue, Apt. 1604, Caribe Plaza Condominium, San Juan, Puerto Rico, as more particularly described on the attached Exhibit B (hereinafter, collectively, the "Properties"). Copy of the Deed of Lease with Option to Purchase is attached hereto and made a part hereof as Exhibit A.

Pursuant to the terms of the Deed of Lease with Option to Purchase, the Seller agreed to lease the Properties to the Buyer during the term of four years, commencing on December 1, 2018 and ending on November 30, 2022, and granted an option to purchase the Properties, among other covenants.

On April 29th, 2020, the option to purchase the Properties was duly exercised by the Buyer and notified to the Seller. Copy of the Notice of Exercise of Option to Purchase is attached hereto and made a part hereof as Exhibit C.

In order to perfect this purchase and sale, the Seller has commenced a short-sale process with FirstBank, to release the mortgage lien currently encumbering the Properties. To that effect, the mortgage holder, FirstBank, has authorized a short-sale of the Properties in the amount of **ONE MILLION SIX HUNDRED AND SEVENTY-FIVE THOUSAND DOLLARS ($1,675,000.00)**.

The Seller has agreed to sell and convey the Properties to Buyer, and the Buyer has agreed to purchase and acquire the Properties from Seller, subject to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing, and of the mutual covenants and conditions herein contained, the Parties hereto represent having the necessary legal capacity and authority to enter into this Agreement and to fulfill all of its terms and conditions and, by virtue of their own will, freely and voluntarily agree to execute this Agreement, in accordance to the following:

### TERMS AND CONDITIONS

**SECTION 1.** Purchase and Sale. On the terms and subject to the conditions set forth in this Agreement, Seller shall sell and convey to Buyer and Buyer shall purchase and acquire the Properties. Moreover, Seller hereby represents and warrants to the Buyer that pursuant to the

Deed of Purchase and Sale (as hereinafter defined). Seller shall sell, transfer and convey title to the Properties to the Buyer and that the sale and transfer includes (but is not limited to) any and all structures and equipment existing thereon, as well as all appurtenances and accessories therein, and all that is attached or permanently placed therein, together with all their uses, actions, rights and easements. Equipment shall mean all the items included and described in the attached <u>Exhibit E</u>.

**SECTION 2.** <u>Purchase Price; Earnest Money; Terms of Payment</u>.

a) <u>Purchase Price</u>. The purchase price (the "Purchase Price") to be paid by Buyer to Seller for the Properties shall be the lump sum ("*precio alzado*") of **ONE MILLION SIX HUNDRED AND SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($1,675,000.00)**. The Purchase Price shall be allocated as follows:

   i. <u>Allocation of Purchase Price for Apartment 1604</u>. For purposes of the execution of this transaction, Apartment 1604 will have an allocated value of One Million Six Hundred Thousand Dollars ($1,600,000.00) of the Purchase Price.

   ii. <u>Allocation of Purchase Price for Parking Space No. 147</u>. For purposes of the execution of this transaction, Parking Space No. 147 will have an allocated value of Twenty Five Thousand Dollars ($25,000.00) of the Purchase Price.

   iii. <u>Allocation of Purchase Price for Parking Space No. 148</u>. For purposes of the execution of this transaction, Parking Space No. 148 will have an allocated value of Twenty Five Thousand Dollars ($25,000.00) of the Purchase Price.

   iv. <u>Allocation of Purchase Price for Parking Space No. 149</u>. For purposes of the execution of this transaction, Parking Space No. 149 will have an allocated value of Twenty Five Thousand Dollars ($25,000.00) of the Purchase Price.

b) <u>Terms of Payment</u>. Buyer shall obtain mortgage financing to pay the balance of the Purchase Price to Seller at Closing (as hereinafter defined). In the case financing cannot be obtained for circumstances not attributable to Buyer, Buyer can terminate this Agreement without any penalty.

**SECTION 3.** <u>Closing</u>. The Closing shall occur on or before one hundred and eighty (180) days following the date hereof (the "Closing"). The closing will be on the date and at the location mutually agreed by Buyer and Seller or such other date and location mutually agreed by the Parties in writing. Insofar as Buyer is currently in possession of the Properties, no final walk-through of the Properties shall be scheduled prior to Closing.

**SECTION 4.** <u>Buyer Covenants</u>. Buyer covenants and agrees with Seller that:

a) <u>Payment Method</u>. Buyer shall be able procure and obtain approval for financing during the term following the execution hereof and the Closing (the "Term"). If during the Term the Buyer decides to purchase the Properties in cash, Buyer shall so notify Seller and proceed to set a date for Closing. On the Closing, Buyer shall pay to Seller the Purchase Price after the deduction of: (i) the Seller's "closing costs" described in Section 6(a) herein; (ii) any cost, tax, expense, or lien affecting the Properties; and (iii) any other deduction provided herein.



2

**SECTION 5.** Seller's Deliveries. On or after the Effective Date, Seller shall deliver to Buyer an official stamped statement of account from CRIM and statement of account of the special property tax imposed under Act No. 7-2009 ("contribución especial sobre la propiedad inmueble de la Ley 7"). Buyer acknowledges and agrees that all such documents, reports, data, and information are provided by Seller and shall be received by Buyer "as-is, where-is." Seller does not make any representation or warranty, express or implied, as to the accuracy or completeness of any such documents, reports, data or information, and Seller shall have no liability resulting from the use thereof by Buyer or any of Buyer's agents or representatives.

In addition to the Deed of Purchase and Sale, at the Closing, Seller shall deliver to Buyer any documents required to be delivered by Seller under this Agreement, including those described in Exhibit D, which have not been delivered to Buyer prior to the date of Closing. All closing documents shall be in a form reasonably acceptable to counsel for Buyer and Seller.

**SECTION 6.** Deed; Closing Costs. At the Closing, Seller shall convey the Properties to Buyer by executing a deed of purchase and sale (the "Deed of Purchase and Sale") granting and warranting fee-simple title to the Properties, free and clear of all liens and encumbrances other than those matters set forth in Exhibit E hereto (the "Permitted Encumbrances"). To that effect, Buyer shall be entitled to exclusive possession of the Properties on and after the date of Closing, subject to the Permitted Encumbrances.

Buyer shall select the notary public before whom the Deed of Purchase and Sale will be executed. The parties shall then pay the following "closing costs":



a) **Buyer** shall pay the following fees for cancellation on the original Deed of Purchase and Sale:
   i) Internal Revenue stamps;
   ii) Legal aid stamps;
   iii) Notary Tax stamps; and,
   iv) The Notarial Tariff equal to 0.005 of the Purchase Price.

First Bank shall bear the costs of cancellation of any lien or encumbrance affecting the Properties, other than a Permitted Encumbrance.

b) **Buyer** shall pay the following fees for cancellation on the first certified copy of the Deed of Purchase and Sale:
   i) Internal Revenue stamps;
   ii) Legal aid stamps;
   iii) Notary Tax stamps; and,
   iv) Costs and expenses in connection with recordation of the Properties with the Registry of the Property.

Buyer shall bear the costs of cancellation of the Deed of Lease with Option to Purchase encumbering the Properties, provided that Buyer shall request Notary Public Gwendolyn Moyer Alma to withdraw the Deed of Lease with Option to Purchase from recordation if such document has not been recorded with the Registry of the Property as of the Closing.

Except as otherwise provided herein, each party shall bear its own cost and expenses in connection with the transaction contemplated in this Contract, including, without limitation,

attorneys' fees, inspection cost and expenses, title studies and title insurance premiums.

SECTION 7. Evidence of Title. Title to be delivered by Seller to Buyer hereunder at the Closing shall be fee-simple title to the Properties, free and clear of all liens and encumbrances other than the Permitted Encumbrances and any other matter specifically listed in the Deed of Purchase and Sale.

SECTION 8. Prorations at Closing.

a) Real Estate Taxes and Utilities. Buyer and Seller shall prorate and adjust as of 11:59 p.m. of the day immediately preceding the day of Closing accrued general real estate and assessment, for the current tax year on the basis of the most recent bills available prior to Closing.

b) Insurance. Buyer shall be responsible for the payment of all insurance policies for the Properties from the date of execution of the Deed of Purchase and Sale.

c) Condominium association dues and/or Homeowner association. Buyer shall be responsible for the payment of all dues and assessments with respect to the Properties and relating to the period prior to the Closing Date.

d) Other. Such other items that are customarily prorated in transactions of this nature, including, without limitation, utilities and any service contracts which shall continue following the Closing shall be prorated.

All such prorations shall be made on the basis of the actual number of days of the month which have elapsed as of the day of Closing. To the extent information necessary to make such prorations is not available at the Closing, the amount of such prorations shall be subject to adjustment in cash after the Closing as and when complete and accurate information becomes available. Seller and Buyer agree to cooperate and use their best efforts to make such adjustments no later than thirty (30) days after the Closing. Except as set forth in this Section 8, all items of income and expense for the period prior to the Closing will be for the account of Seller and all items of income and expense for the period on and after the Closing will be for the account of Buyer, all as determined by the accrual method of accounting. With respect to bills received after the Closing, insofar as buyer has been and is currently in possession of the properties and consuming their utilities, Buyer will be responsible to pay such bills for services and utilities.

SECTION 9. As-Is Sale. Buyer specifically acknowledges and agrees that, except as expressly set forth in Section 10 and Section 11 hereof, (i) Seller shall sell and Buyer shall purchase the Properties "as-is," "where-is" and "with all faults" and latent and patent defects; and (ii) Buyer is not relying on any representations or warranties of any kind whatsoever, whether oral or written, express or implied, statutory or otherwise, from Seller or any of its agents, employees, members, representatives, attorneys or brokers as to any matter concerning the Properties. This Section shall survive the Closing.

SECTION 10. Due Diligence Period. Prior to executing this agreement, the real estate broker has advised Seller and Buyer, in accordance with the provisions of Act No. 10 of April 26, 1994, as amended, about the need of performing a physical inspection of the Properties by a duly licensed professional, authorized by the Commonwealth of Puerto Rico. Notwithstanding, provided that the Buyer has been in possession of the Properties since December 1st, 2018, Buyer hereby waives his right to inspect the Properties.

4

**SECTION 11.** <u>Representations, Warranties and Covenants of Seller</u>.   In addition to any other representation, warranty or covenant contained in this Agreement, Seller represents and warrants to Buyer as follows:

a) This Agreement and all the documents required to be executed by Seller at the Closing have been duly authorized, executed, and delivered by Seller, and are the valid, and binding obligations of Seller, and do not violate any provisions of any agreement to which Seller is a party or any law, judgment or order applicable to Seller;

b) Seller currently is the owner with fee-simple interest in the Properties and has the right to enter into this Agreement and convey the Properties to Buyer without the consent of any person;

c) No actions, suits, or proceedings are pending or, to the best knowledge of Seller, have been threatened against or affecting Seller or the transactions contemplated hereby at law or in equity or before any federal, state, or local governmental department, commission, board, bureau, agency, or instrumentality, other than the bankruptcy proceeding in the case captioned In re: Fernando Luis Villamil Wiscovitch, Case No. 19-06327. Seller represents that an Order issued by the United States Bankruptcy Court for the District of Puerto Rico to effectively authorize the relief from stay to execute the mortgage has been entered (such Order is attached hereto as <u>Exhibit H</u>) and that he will obtain an order for approval for the sale of the properties from the United States Bankruptcy Court to sell the Properties.



d) The execution, delivery and performance of this Agreement, in accordance with its terms, does not violate any contract, agreement, commitment, order, judgment or decree to which Seller is a party or by which Seller is bound or conflict with any law or regulation to which Seller is subject.   No other approval than the one mentioned in the foregoing sub-paragraph "c)", authorization, order, license or consent of, or registration or filing with, any governmental authority or other person is required in connection with Seller's execution, delivery and performance of this Agreement and the transactions contemplated hereby;

e) Seller has not received written notice from any governmental authority advising of a violation of any building codes, fire codes, access or health codes, environmental, zoning, subdivision, and land use law and other local, state and federal laws and regulations, which violation has not been removed;

f) Seller has not received any written notice of any condemnation, eminent domain or other proceeding, either instituted or threatened to be instituted, with respect to the Properties;

g) At the Closing there will be no outstanding contracts made by Seller for the construction, design or repair of any portion of the Properties which have not been fully paid;

h) Seller represents that Buyer is the current tenant in the Properties and that there is no lease agreement on the Properties, other than the Deed of Lease with Option to Purchase;

i) The Rent Credit (as defined in the Deed of Lease with Option to Purchase) and the Earnest Money (referred to in the Deed of Lease with Option to Purchase as the Security Deposit) paid by Buyer to Seller is fully creditable to the Purchase Price.

j) Seller does not owe any property taxes or assessments regarding the Properties and, if so, such balances will be deducted from the Purchase Price by Buyer at Closing.

5

SECTION 12. Representations, Warranties and Covenants of Buyer. In addition to any other representations or warranty contained in this Agreement, Buyer represents and warrants to Seller as follows:

a) This Agreement and all documents executed by Buyer which are to be delivered to Seller at the Closing are, or at the time of Closing will be, duly authorized, executed, and delivered by Buyer, and are, or at the Closing will be, legal, valid, and binding obligations of Buyer, and do not, and at the time of Closing will not, violate any provisions of any agreement to which Buyer is a party or to which it is subject or any law, judgment or order applicable to Buyer.

b) Buyer shall indemnify Seller against and hold them harmless from any loss, cost, claim, liability or expense arising from any of Buyer's representations or warranties contained in this Agreement not being true, correct and complete at the date made or the date of Closing.

SECTION 13. Default.

a) Seller and Buyer agree that, in the event of a default by Buyer, Seller's sole and exclusive remedy shall be to terminate this Agreement.

b) In the event of a default hereunder by Seller, Buyer shall have the option to either (i) bring an action for specific performance of this Agreement, or (ii) terminate this Agreement whereupon the Seller shall be liable to Buyer upon demand for all actual, reasonable, documented out-of-pocket costs and expenses, including, without limitation, due diligence costs, and reasonable attorney's fees incurred by Buyer in pursuing the subject transaction.

SECTION 14. Notices. Any notice required or desired to be given to any party shall be in writing and shall be deemed given when deposited in the United States mail, first class, postage prepaid, sent via a nationally recognized delivery service, or email with confirmed receipt to:

Buyer:  Isaac Manke
35 Muñoz Rivera Ave., Apt. 1604
San Juan, PR 00901
Isaac.manke@gmail.com

Seller:  Dr. Fernando Luis Villamil Wiscovitch
10710 Sir Place
Jenks, OK 74037
fernandoluisvillamil@yahoo.com

Ms. Denise Rovira Bellido
303 Calle Villamil, Apt. 1604
San Juan, PR 00907
deniserovira7@yahoo.com

All notices shall also be notified to the real estate broker in this transaction:

Broker:  Bello Lorié LLC
Attn. Pedro A. Bello Lorié
I-4 San Patricio Ave., Apt. 202

6

Guaynabo, PR 00968-3211
Email: p.bello.lorie@gmail.com

**SECTION 15.** Successors in Interest. All provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the respective heirs, successors, assigns and personal representatives of each party to this Agreement. Any party may from time to time change the address at which its notices are to be delivered or mailed by giving the other party notice of such change.

**SECTION 16.** Entire Agreement. This document and exhibits fully sets forth all agreements and understandings of the parties to this Agreement with respect to the subject matter hereof. Each pronoun used herein shall have the same gender as the person to which it refers. This Agreement shall be construed in accordance with the laws of the Commonwealth of Puerto Rico. All exhibits referred to in this Agreement are hereby incorporated herein by reference.

**SECTION 17.** Captions. The captions at the beginnings of the several sections of this Agreement are not part of the context hereof, but have been inserted only to assist in locating those sections. They shall be ignored in construing this Agreement.

**SETION 18.** Severability. If any provision of this Agreement or application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances, other than those as to which it is so determined invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

**SECTION 19.** Attorney's Fees. In the event of any litigation arising out of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs.

**SECTION 20.** No Partnership. Nothing contained in this Agreement shall be construed to create a partnership or joint venture between the parties or their successors in interest.

**SECTION 21.** Time. Time is of the essence in this Agreement. If the final day of any period of time set forth in any provision of this Agreement falls upon a Saturday, Sunday or legal holiday under the laws of Puerto Rico, then in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or such legal holiday.

**SECTION 22.** Counterparts. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile or pdf transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile or pdf shall be deemed to be their original signatures for all purposes.

**SECTION 23.** Brokers. The commission equal to three percent (3%) of the Purchase Price payable to Bello Lorié LLC (Lic. No. 18.633) d/b/a Bello Lorie Real Estate, shall be payable by Buyer at the Closing.

Buyer and Seller recognize and agree that Bello Lorié LLC and/or Pedro A. Bello Lorié acts only as a real estate broker in this transaction and will not be responsible for any non-

compliance of the Parties in this transaction or misrepresentation by them, including hidden defects in construction, malfunction of appliances or fixtures or defects in the title of the Properties of this Contract or problems, unless said responsibility is assumed and accepted in writing by the Broker. Both Parties grant full release of responsibility to Bello Lorié LLC and/or Pedro A. Bello Lorié, due to non-compliance with the terms of the Contract or any misrepresentation made by either Seller and/or Buyer in this transaction.

[SIGNATURES CONTAINED ON THE NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and they initial all pages and sign in the places and on the dates below states.

**BUYER**

By: _____
Name: Isaac Manke
Date: June 25, 2021

By: _____
Name: Yezenia Manke
Date: June 25, 2021

**SELLER**

By: _____
Name: Fernando Luis Villamil Wiscovitch
Date: June __, 2021

By: _____
Name: Denise Rovira Bellido
Date: June 24, 2021

9

## EXHIBIT B

## LEGAL DESCRIPTION

The Properties is comprised of an apartment unit and three side-by-side parking spaces, which are legally described as follows:

**Apartment 1604**

-----"PROPIEDAD HORIZONTAL-URBANA: APARTAMENTO NÚMERO MIL SEISCIENTOS CUATRO (1604). Es un apartamento residencial localizado en el piso número siete (7) del inmueble sometido al régimen de la propiedad horizontal denominado Condominio Caribe Plaza que ubica encima de un estacionamiento comercial privado por virtud de un derecho de superficie, que a su vez está localizado en el Barrio Puerta de Tierra del Municipio de San Juan, Puerto Rico. Dicho piso ubica en el undécimo nivel de la estructura total que compone el condominio y el estacionamiento comercial.

-----Este apartamento tiene un área de construcción de TRES MIL SETECIENTOS NOVENTA Y DOS PUNTO SETENTA Y OCHO pies cuadrados (3,792.78 p.c.), equivalentes a TRESCIENTOS CINCUENTA Y DOS PUNTO TREINTA Y SEIS metros cuadrados (352.36 m.c.). Este apartamento tiene su puerta de entrada por el lindero NOROESTE, por ella se sale al vestíbulo (lobby) del apartamento que a su vez conduce al área de ascensores y escaleras y de ahí se sale al exterior.

-----Este apartamento tiene un largo máximo de veintidós punto cincuenta y seis (22.56) metros y un ancho máximo de veinticinco punto once (25.11) metros.

-----Linderos: Por el SUROESTE, en veinticuatro punto noventa y seis (24.96) metros colinda con área exterior; por el NOROESTE, en veintidós punto cincuenta y uno (22.51) metros colinda con área común que lo separa del apartamento mil seiscientos tres (1603); por el NORESTE, en veinticinco punto once (25.11) metros colinda con área exterior y la pared que lo separa del apartamento mil seiscientos dos (1602); y por el SURESTE, en veintidós punto cincuenta y seis (22.56) metros colinda con área exterior.

-----Este apartamento consta de un área de vestíbulo (lobby), tres habitaciones una de ellas designada como "master room" con vestidor y baño, dos habitaciones designadas como "bedroom" cada una con vestidor y baño, un pasillo con armario, sala con baño, comedor, cocina, dinette, sala de estar "family room", cuarto de servicio con baño, lavandería, ropero y terraza.

-----El titular de este apartamento está obligado a permitir el paso a través del área de vestíbulo (lobby) del apartamento por otros titulares de apartamentos del Condominio, de acuerdo a lo dispuesto en la cláusula Siete(7) del Párrafo DUODÉCIMO de la escritura matriz del Condominio.

-----Le corresponde a este apartamento el UNO PUNTO CINCO CUATRO TRES CERO por ciento (1.5430%) en los Elementos Comunes Generales del Condominio.

-----Le corresponde a este apartamento el UNO PUNTO CINCO NUEVE SIETE CERO por ciento (1.5970%) en los Elementos Comunes Limitados de los Residentes."

**Parking Space No. 147**

-----B. Parking Space Number One Hundred Forty seven (147), Condominium Caribe Plaza (hereinafter referred to as "Parking Space 147"), which legal description in Spanish is as follows:

-----"PROPIEDAD HORIZONTAL URBANA- ESTACIONAMIENTO NÚMERO Ciento Cuarenta y Siete (147). Estacionamiento marcado con el número Ciento Cuarenta y Siete (147), ubicado en una porción del sótano de un estacionamiento comercial privado, cuya porción del sótano le pertenece por virtud de un derecho de superficie al edificio sometido al régimen de propiedad horizontal denominado Condominio Caribe Plaza, la cual fue construido encima de dicho estacionamiento comercial privado, que a su vez está localizado en el Barrio Puerta de Tierra del Municipio de San Juan, Puerto Rico.------------------------------

-----Este estacionamiento se compone de un área abierta y tiene un área de construcción de CIENTO CUARENTA Y NUEVE PUNTO SETENTA Y DOS pies cuadrados (149.72 p.c.), equivalentes a TRECE PUNTO NOVENTA Y UNO metros cuadrados (13.91 m.c.).

-----Linderos: Por el SUROESTE, en DOS PUNTO CINCUENTA Y TRES metros (2.53 m.) colinda con área común; por el NOROESTE, en CINCO PUNTO CINCUENTA metros (5.50 m.) colinda con estacionamiento designado Ciento Cuarenta y Ocho (148); por el NORESTE, en DOS PUNTO CINCUENTA Y TRES metros (2.53 m.) colinda con área común; y por el SURESTE, en CINCO PUNTO CINCUENTA metros (5.50 m.) colinda con área común------------------------------

-----El acceso directo de este estacionamiento se encuentra en su lindero Noreste.

-----Le corresponde a este estacionamiento el CERO PUNTO CERO SEIS UNO CERO por ciento (0.0610%) en los Elementos Comunes Generales del Condominio.

-----Le corresponde a este estacionamiento el CERO PUNTO CERO SEIS TRES CERO por ciento (0.0630%) en los Elementos Comunes Limitados de los Residentes."

**Parking Space No. 148**

-----C. Parking Space Number One Hundred Forty Eight (148), Condominium Caribe Plaza (hereinafter referred to as "Parking Space 148", which legal description in Spanish is as follows:
-----"PROPIEDAD HORIZONTAL URBANA- ESTACIONAMIENTO NÚMERO Ciento Cuarenta y Ocho (148). Estacionamiento marcado con el número Ciento Cuarenta y Ocho (148), ubicado en una porción del sótano de un estacionamiento comercial privado, cuya porción del sótano le pertenece por virtud de un derecho de superficie al edificio sometido al régimen de propiedad horizontal denominado Condominio Caribe Plaza, la cual fue construido encima de dicho estacionamiento comercial privado, que a su vez está localizado en el Barrio Puerta de Tierra del Municipio de San Juan, Puerto Rico.------------------------------

-----Este estacionamiento se compone de un área abierta y tiene un área de construcción de CIENTO CUARENTA Y NUEVE PUNTO SETENTA Y DOS pies cuadrados (149.72 p.c.), equivalentes a TRECE PUNTO NOVENTA Y UNO metros cuadrados (13.91 m.c.).

-----Linderos: Por el SUROESTE, en DOS PUNTO CINCUENTA Y TRES metros (2.53 m.) colinda

11

con área común; por el NOROESTE, en CINCO PUNTO CINCUENTA metros (5.50 m.) colinda con estacionamiento designado ciento cuarenta y nueve (149); por el NORESTE, en DOS PUNTO CINCUENTA Y TRES metros (2.53 m.) colinda con área común; y por el SURESTE, en CINCO PUNTO CINCUENTA metros (5.50 m.) colinda con el estacionamiento designado Ciento Cuarenta y siete (147). ------------------------------------

-----El acceso directo de este estacionamiento se encuentra en su lindero Noreste.

-----Le corresponde a este estacionamiento el CERO PUNTO CERO SEIS UNO CERO por ciento (0.0610%) en los Elementos Comunes Generales del Condominio.

-----Le corresponde a este estacionamiento el CERO PUNTO CERO SEIS TRES CERO por ciento (0.0630%) en los Elementos Comunes Limitados de los Residentes."

### Parking Space No. 149

-----D. Parking Space Number One Hundred Forty Nine (149), Condominium Caribe Plaza (hereinafter referred to as "Parking Space 149"), which legal description in Spanish is as follows:

-----"PROPIEDAD HORIZONTAL URBANA- ESTACIONAMIENTO NÚMERO Ciento Cuarenta y Nueve (149). Estacionamiento marcado con el número Ciento Cuarenta y Nueve (149), ubicado en una porción del sótano de un estacionamiento comercial privado, cuya porción del sótano le pertenece por virtud de un derecho de superficie al edificio sometido al régimen de propiedad horizontal denominado Condominio Caribe Plaza, la cual fue construido encima de dicho estacionamiento comercial privado, que a su vez está localizado en el Barrio Puerta de Tierra del Municipio de San Juan, Puerto Rico. -------------------------------

-----Este estacionamiento se compone de un área abierta y tiene un área de construcción de CIENTO CUARENTA Y NUEVE PUNTO SETENTA Y DOS pies cuadrados (149.72 p.c.), equivalentes a TRECE PUNTO NOVENTA Y UNO metros cuadrados (13.91 m.c.).

-----Linderos: Por el SUROESTE, en DOS PUNTO CINCUENTA Y TRES metros (2.53 m.) colinda con área común; por el NOROESTE, en CINCO PUNTO CINCUENTA metros (5.50 m.) colinda con área común; por el NORESTE, en DOS PUNTO CINCUENTA Y TRES metros (2.53 m.) colinda con área de común, y por el SURESTE, en CINCO PUNTO CINCUENTA metros (5.50 m.) colinda con el estacionamiento designado Ciento Cuarenta y Ocho (148). --------------------
-----------------------

-----El acceso directo de este estacionamiento se encuentra en su lindero Noreste.

-----Le corresponde a este estacionamiento el CERO PUNTO CERO SEIS UNO CERO por ciento (0.0610%) en los Elementos Comunes Generales del Condominio.

-----Le corresponde a este estacionamiento el CERO PUNTO CERO SEIS TRES CERO por ciento (0.0630%) en los Elementos Comunes Limitados de los Residentes."

12

-----The Properties described above are recorded in the Registry of the Property Section I of San Juan at page One Hundred twenty six (126), volume Fifty (50) of Puerta de Tierra Ward, property number One Thousand Two Hundred Thirty Seven (1,237).

-----The Landlord states that the real property tax identification number (número de catastro) assigned by the Municipal Revenue Collection Center (CRIM) is: 040-016-146-02.

13

## EXHIBIT E

### EQUIPMENT

The following equipment is included as part of the Properties:

- [TO FOLLOW]

14

## EXHIBIT F

### PERMITTED ENCUMBRANCES

1. Residential Lease Agreement with Option to Purchase executed on November 15, 2018 pursuant to Deed Number One Hundred and Ten (110) before Notary Public Gwendolyn Moyer Alma.

2. Restrictive covenants imposed by the Master Deed of the Caribe Plaza Condominium.

3. Rights, if any, of any utility company to construct and/or maintain lines, pipes, wires, cables, poles, conduits and distributions boxes and equipment in, over, under, and/or upon the Properties or any portion thereof.

15

## EXHIBIT G

### CLOSING DOCUMENTS

1. Deed of Lease with Option to Purchase
2. Draft of Purchase and Sale Deed
3. Tax certificate from the Puerto Rico Municipal Tax Collection Center.
4. Tax certificate from the Puerto Rico Department of the Treasury under Act 7.
5. Last utility bills of PREPA.
6. Last utility bills of PRASA.
7. Current Statement from the Homeowners Association of the Caribe Plaza Condominium.
8. Settlement Sheet



16

## EXHIBIT H

Order granting relief from stay.

17